LEÓN ET AL., DEMANDANTES Y APELADOS, *v.* COLÓN ET AL.,
DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Arecibo en
un caso de *injunction.*

No. 1153.—Resuelto en julio 30, 1914.

INJUNCTION PRELIMINAR—RATIFICACIÓN O REVOCACIÓN DEL MISMO—DISCRECIÓN
    JUDICIAL.—La ratificación o revocación de un *injunction* preliminar descansa
    en la sana discreción de la corte regulada por reglas sabias y justas, y a
    menos que se demuestre que el juez sentenciador abusó de su poder discre-
    cional, su discreción no debe ser controlada por la corte de apelación.
INJUNCTION—SUSPENSIÓN DE LA EJECUCIÓN DE UNA SENTENCIA.—Por medio de
    un *injunction* puede temporalmente paralizarse la ejecución de una sentencia
    en evitación de daños y de pleitos.
ID.—JURAMENTO DEFECTUOSO DE LA SOLICITUD—JURAMENTO POR PROPIO CONO-
    CIMIENTO.—Aunque el juramento de la solicitud·en este caso, expresivo de
    que los hechos que aparecen consignados en la misma le constan al que jura
    por propio conocimiento, no se ajusta estrictamente al artículo 118 del Código
    de Enjuiciamiento Civil, sin embargo no cabe concluir que sea nulo, ya que
    puede considerarse como bastante para que la parte que jura quede sometida
    a la penalidad del perjurio si se probara que las alegaciones no son ciertas.
ID.—FIANZAS—CLARIDAD EN SU REDACCIÓN.—Las fianzas deben redactarse con la
    mayor claridad que sea posible, a fin de que si llega el caso puedan hacerse
    efectivas sin dificultad.
ID.—FIANZAS DEFECTUOSAS—JURAMENTO DEFECTUOSO DE LOS FIADORES.—La fianza
    de *injunction* prestada en este caso es defectuosa por ser ininteligible y el
    juramento de los dos fiadores también es defectuoso por no haberse expresado
    con toda claridad que cada uno de ellos sea dueño de bienes libres por valor
    de más de mil dólares, que fué la suma·fijada por la corte. ·

Id.—Fianza de Más de Dos Mil Dólares Suscrita por Más de Dos Fiadores—Fiadores no Conocidos Personalmente por el Notario.—Cuando la fianza excediere de dos mil dólares y la ofrecieran más de dos fiadores, debe cumplirse con lo dispuesto en el artículo 355 del Código de Enjuiciamiento Civil enmendado en 1908, y si el notario no conociera personalmente a los fiadores, se observará lo prescrito en la sección 3 de la ley sobre *affidavits* de 1908, y en el caso de que algún fiador no supiere firmar, deberá seguirse el procedimiento establecido en el caso de *Vendrell* v. *Pellot*, resuelto en julio 11, 1914.

Id.—Impugnación de la Suficiencia de los Fiadores—Prueba de la Suficiencia de los Mismos.—De acuerdo con la sección 7 de la ley de *injunction* de 1906, pág. 83, cuando la suficiencia de los fiadores es impugnada dentro de los cinco días siguientes a la notificación del mandamiento, los fiadores están obligados a probar su suficiencia, pero si dicha impugnación se hace posteriormente, entonces la parte impugnadora debe alegar y probar la insuficiencia de los fiadores a satisfacción de la corte.

Id.—Fianza Defectuosa—Injunction Debidamente Decretado.—Aun cuando el *injunction* haya sido debidamente decretado, si la fianza exigida como requisito *si ne qua non* para librarlo no reune los requisitos que la ley exige, debe la corte dejar sin efecto el mandamiento expedido.

Los hechos están expresados en la opinión.

Abogado de Eulogia Colón Alvarez: *Sr. Ricardo Agrait.*

Abogado de los apelados: *Sr. Rafael López Landrón.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra una orden de la Corte de Distrito de Arecibo negándose a anular cierto auto de *injunction* que había expedido el 31 de marzo de 1914.

Jesús de León y su legítima esposa establecieron una demanda en la dicha Corte de Distrito de Arecibo contra Eulogia Colón, la Sucesión de Tomás Boneta y la "Plazuela Sugar Company," sobre nulidad de escrituras y otros extremos. En la demanda se alega, en resumen, que los demandantes eran y son dueños de cierta finca que poseen en la actualidad materialmente y que vale unos diez mil pesos; que hipotecaron dicha finca por dos mil pesos a favor de Tomás Boneta; que no pagaron la deuda y concertaron con el acreedor una ampliación del préstamo; que el acreedor estuvo conforme, pero abusando de la ignorancia de los demandantes, personas rústicas y analfabetas, se combinó fraudulentamente con su con-

cubina la demandada Eulogia Colón y en vez de otorgar, como hicieron creer a los demandantes que otorgaban, una escritura de hipoteca, redactaron una de venta con pacto de retro, con el propósito de arrebatar la finca a los demandantes; que los demandantes debían cierta suma de dinero a la "Plazuela Sugar Company" y para asegurar su pago cedieron a dicha corporación, por exigencia de la misma y no obstante habérsele advertido que el traspaso sería nulo e ilegal, el derecho de retracto que se reconoció a los demandantes en la referida escritura fraudulenta, y que utilizando ilegal y fraudulentamente la escritura en cuestión, la demandada Eulogia Colón Alvarez demandó en desahucio a los demandantes. La demanda termina suplicando que se condene a la demandada Eulogia Colón a restituir a los demandantes el título de propiedad de la finca; que se declaren nulas las escrituras que aparecen otorgadas por los demandantes a Eulogia Colón y "Plazuela Sugar Company;" que se prohiba a Eulogia Colón ejercitar ningún acto contrario a la posesión de los demandantes, y que se condene a los demandados que se opusieron, al pago de las costas, desembolsos y honorarios de abogado. La demanda, con los documentos acompañados a la misma, ocupa veinte y dos páginas de la transcripción. Lo que presentamos es un extracto muy reducido, que hemos estimado conveniente para el más claro entendimiento de la naturaleza de las cuestiones envueltas en este caso.

La demanda se archivó el once de marzo de 1914 y el 31 del mismo mes se presentó una petición jurada solicitando que se dictara un mandamiento de *injunction* ordenando al marshal de la Corte Municipal de Arecibo y a la demandada Eulogia Colón, que no llevaran a efecto acto alguno tendente a privar a los demandantes de la posesión de la finca en litigio, mientras se sustanciaba y decidía el pleito sobre nulidad. Los mismos hechos alegados en la demanda sirven de base a la petición de *injunction* en la que se consigna, además, que la Corte Municipal de Arecibo dictó sentencia en el caso de desahucio seguido por la demandada Eulogia Colón contra

los demandantes, condenando a éstas a dejar expedita a favor
de la Colón la finca de que se trata, y que el márshal de la
dicha corte municipal estaba a punto de lanzar a los deman-
dantes de la finca, hecho que les ocasionaría graves e irre-
parables perjuicios y traería consigo una multiplicidad de
procedimientos judiciales.

La orden de *injunction* solicitada se decretó el mismo día
31 de marzo de 1914, para ser ejecutada previa prestación
de una fianza por la suma de mil pesos. La fianza fué pres-
tada y aprobada el 1 de abril de 1914, y, el siete de abril de
1914, Eulogia Colón Alvarez presentó una moción solicitando
la revocación de la orden de *injunction* expedida basándose
en que: 1°., la orden de *injunction* librada ha tenido el efecto
de suspender una sentencia de desahucio dictada el 5 de marzo
de 1914, lo que es contrario a la jurisprudencia del Tribunal
Supremo de Puerto Rico; 2°., el daño que puedan sufrir los
demandantes si se ejecuta la sentencia de desahucio puede
ser ampliamente compensado por una acción de daños y per-
juicios; 3°., la solicitud no está debidamente jurada por el
peticionario; 4°., la fianza no se prestó de acuerdo con lo que
ordenó la corte, siendo además defectuoso su juramento, y
5°., la demandada excepciona la suficiencia de los fiadores.

La Corte de Distrito de Arecibo desestimó la moción, y
contra su resolución, según hemos ya consignado, se interpuso
por la demandada Eulogia Colón Alvarez el presente recurso
de apelación.

La ratificación o la revocación de un *injunction* prelimi-
nar, dice Cyc. resumiendo la jurisprudencia sobre la materia,
descansa en la sana discreción de la corte. Esa discreción, sin
embargo, debe regularse por reglas sabias y justas. Pero,
a menos que se demuestre la existencia de un abuso, la discre-
ción del juez que conoció originalmente del caso, no debe ser
controlada por la corte de apelación. Véanse 22 Cyc., 982,
y las autoridades que cita.

A la luz de la anterior doctrina, procederemos al estudio y resolución de las cuestiones suscitadas por el orden en que lo fueron.

1. Como hemos visto, en la moción solicitando la revocación de la orden de *injunction,* no se niega la verdad de los hechos consignados en la demanda y en la petición de *injunction.* Siendo ello así, debemos aceptar dichos hechos como ciertos, a los efectos de resolver si la corte sentenciadora debió o nó haber revocado su orden de 31 de marzo de 1914.

El *injunction* decretado en este caso no tiene más finalidad que la de hacer respectar preventivamente el estado de hecho en que se encuentran los demandantes con relación a la finca en litigio, desde antes de comenzar el pleito. Y como haciéndose respetar tal estado de hecho, se evitan indudablemente pleitos sobre reivindicación e indemnización, y si llega a causarse algún perjuicio a los demandados, éstos pueden obtener la compensación debida, con la fianza prestada por los demandantes, estimamos que la corte sentenciadora aplicó la ley y ejerçitó su discreción debidamente.

La decisión de esta Corte Suprema en el caso de *Martínez* v. *Moreno,* 10 D. P. R., 84, que se invoca por la parte apelante, se dictó en un caso que no es enteramente igual al presente, pues no solo se había pronunciado una sentencia de desahucio, sino que tal sentencia había sido confirmada por esta Corte Suprema, y, además, se había librado ya contra el peticionario, en el mismo pleito en que trataba de paralizar la ejecución de la sentencia, una orden de *injunction* que estaba vigente y que hubiera resultado en abierta contradicción con la que se solicitaba, de haberse ésta expedido.

Por el contrario la decisión de esta Corte Suprema en el caso de *Garcia* v. *Torres et al.,* 20 D. P. R., 169, invocada por el juez sentenciador, sostiene la resolución recurrida, ya que en ella se estableció la doctrina de que por medio de un *injunction* podía temporalmente paralizarse la ejecución de una sentencia, en evitación de daños y de pleitos. Véase también

el caso de *Rio* v. *Vázquez,* 17 D. P. R., 170, en el que se sentó la siguiente jurisprudencia: "Aun cuando debe procederse con gran cautela en la expedición de mandamientos de *injunction* para impedir el cumplimiento de la sentencia, a instancia del dueño del inmueble que deba ser subastado, esto no implica que deban ser denegados en los casos en que la justicia y la equidad lo demanden."

2. Con respecto al segundo fundamento de la moción, nos limitaremos a decir que además de que podrían ocurrir hechos que hicieran ilusoria una reclamación de daños y perjuicios, consideramos difícil que una compensación pecuniaria proporcionara un remedio adecuado en este caso, si es verdad que son ciertos los hechos alegados por los peticionarios.

3. El juramento de la petición de *injunction* expresa "que los hechos que aparecen consignados en la petición," le constan al que jura o sea al demandante Jesús de León, "por propio conocimiento." En la moción sólo se consigna una conclusión, a saber: "que la solicitud no está debidamente jurada," sin que se exprese por qué. En el alegato presentado a esta Corte Suprema se dice que en el juramento no expone la parte que todo lo alegado es cierto.

Es indudable que hubiera sido más correcto emplear en el juramento la fórmula exacta de la ley,—artículo 118 del Código de Enjuiciamiento Civil,—o sea: "En todos los casos de alegaciones juradas, la declaración escrita y jurada de la parte deberá *afirmar que le consta por propio conocimiento que es cierto lo alegado,* excepto en cuanto a las materias que en dicha declaración manifieste conocer por información y creencia, en cuyo caso expresará que las cree ciertas;" pero es indudable también que la fórmula empleada, aunque deficiente, en bastante para concluir que la parte quedó sometida a la penalidad del perjurio si se probare que las alegaciones no son ciertas, y que, por tanto, no puede considerarse el juramento como ineficaz y nulo.

4. Después de consignarse en la fianza que Jesús de León y su esposa, como principales, y Víctor Román y Baldomero

de León, como fiadores, quedan obligados para con la deman-
dada Eulogia Colón Alvarez separada y mancomunadamente,
al pago de la suma de mil dollars, se dice:

"Dicha finca responde y por ella nos comprometemos a satisfacer
a la demandada.Eulogia Colón Alvarez los daños y perjuicios que
pudieran ocasionársele a dicha demandada por virtud del alzamiento
de una orden de entredicho, dictada por la corte, si se resolviese defini-
tivamente por el tribunal que los solicitantes no tenían derecho a soli-
citar dicho alzamiento."

Es tan obscura la redacción de ese párrafo esencial de
la fianza, que suponemos que se han omitido algunas pala-
bras y que, por ejemplo, por un error de copia, la palabra
"finca" se ha puesto en vez de la palabra "fianza."

Las fianzas deben redactarse con la mayor claridad que
sea posible a fin de que, si llega el caso, puedan hacerse efec-
tivas sin dificultad. Y no sólo encontramos sin sentido el pá-
rrafo transcrito, ya que no comprendemos que los perjuicios
puedan irrogarse a la demandada Colón Alvarez "por virtud
del alzamiento de una orden de entredicho," sino en todo
caso por virtud de la orden de *injunction* mandando suspen-
der de hecho la ejecución de la sentencia de desahucio obte-
nida a su favor por la dicha demandada en la Corte Munici-
pal de Arecibo, si que también opinamos que el juramento de
los fiadores es defectuoso, pues en él no se expresa con toda
claridad que cada uno de ellos es dueño de bienes libres por
valor de más de mil pesos.

A los efectos de preparar una buena fianza, recomenda-
mos el estudio de la sección 7 de la ley sobre *injunctions* de
1906, de la ley sobre *affidavits* de 1908, del artículo 355 del
Código de Enjuiciamiento Civil enmendado en 1908 y de los
formularios de Jury, de Jones y Binmore y de McCall. Leyes
1906, p. 83; Leyes de 1908, ps. 39 y 52; 2 Jury on Adjudi-
cated Forms of Pleading and Practice, 1666 y 1693; General
Legal Forms by James Jones and Henry Binmore, p. 505,
y McCall's Clerk's Assistant p. 541. Si la fianza excediere

de dos mil pesos y se ofreciesen más de dos fiadores, debe cumplirse con lo dispuesto en el citado artículo 355 del Código de Enjuiciamiento Civil enmendado en 1908, y si el notario no conociere personalmente a los fiadores se observará lo prescrito en la sección 3 de la citada ley sobre *affidavit* de 1906. Para el caso de que algún fiador no supiera firmar, véase nuestra decisión de julio 11, 1914, *Vendrell* v. *Pellot.*

5. Aunque la cuestión de la excepción a la suficiencia de los fiadores carece de importancia para la decisión de este caso atendido el criterio que hemos sustentado al estudiar y resolver el cuarto fundamento de la moción, expondremos que nos parece clara la sección 7 de la ley sobre *injunctions* de 1906, Leyes de 1906, p. 83. Dentro de los cinco días siguientes a la notificación del mandamiento, la persona requerida podrá poner excepción a la suficiencia de los fiadores. Bastará que se ejercite ese derecho en el tiempo fijado por la ley, para que los fiadores vengan obligados a probar su suficiencia. Pero si la persona requerida deja pasar el término sin ejercitar su derecho, entonces cambia su situación y si bien en cualquier momento puede acudir a la corte y alegar que los fiadores carecen de bienes suficientes para cumplir su compromiso, bien por haber quedado insolventes, o haber sufrido grandes pérdidas, o por cualquier otra circunstancia pertinente, no le basta sólo alegarlo sino que tiene que probarlo a satisfacción de la corte. En este caso concreto, según aparece de los autos, la fianza se prestó el 1 de abril de 1914 y la moción solicitando la revocación del *injunction* el 7 del propio mes y año. No consta la fecha en que el demandado fuera requerido, y si el demandado quiso usar del derecho que le concede la sección 7 de la ley sobre *injunctions* ya citada, debió haber alegado claramente dicha fecha en su moción.

6. Refiriéndonos ahora a la totalidad del caso, diremos que, habiendo en consideración todo lo que dejamos expuesto, es indudable que si bien la orden de *injunction* fué debidamente acordada, la fianza que, como requisito *sine qua non*

debía prestarse antes de dar cumplimiento a lo ordenado, no reunía los requisitos que la ley exige, y que, en tal virtud, la corte de distrito debió haber dejado sin efecto el mandamiento expedido. *McCracker* v. *Harris*, 54 Cal., 81; *Ricker, Lee & Co.* v. *Douglas Bros.*, 75 Tex., 180.

Debe revocarse la orden apelada y dictarse otra dejando sin efecto el mandamiento de *injunction* expedido, con permiso a los peticionarios para presentar una nueva solicitud.

> *Revocada la resolución apelada, con permiso a los peticionarios de presentar una nueva solicitud.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.